## AMANDA J. WRIGHT v. ARCH GROOM et al., Appellants.

### Division One, November 30, 1912.

1. **EJECTMENT: Power of Court to Order Survey.** After issue joined on the original petition in ejectment, the court has authority under Secs. 11299 and 11305, R. S. 1909, upon request, to order a survey of the tract in suit; and as the order was directed to the county surveyor, it was not vitiated by the fact that it was directed to a board of three surveyors, namely, the surveyor of the county in which the land lies and the surveyors of two other counties.

2. ————: **Amendment of Petition: Departure: Variance in Description.** It was not error to permit plaintiff, after issue joined in ejectment for a small tract of ground claimed by limitations, and after a survey had been made in pursuance to an order

of court, to file, of her own motion, an amended petition, in which the land is described according to the new survey, it being the same land sued for in the first petition, though, because of uncertainty as to where the dividing line between two sections was, it was described differently, and the area of the second description somewhat exceeds the area of the first. There was no departure by such amendment.

3. ———: ———: **When Allowable.** Amendments are peculiarly within the sound discretion of the court, and are essential incidents of the exercise of judicial power, both at common law and under the statute, which is in aid and declarative of the common law. They are favored by courts, because they avoid delay in joining issue on the merits and tend to bring litigated controversies to an end; and the exercise by the court of its discretion to permit an amendment to a pleading, will not be interfered with on appeal unless palpably abused by grafting a separate and independent suit on the stem of the original proceeding.

Appeal from Shannon Circuit Court.—*Hon. W. N. Evans,* Judge.

AFFIRMED.

*A. H. Livingston* for appellants.

The test in this State as to whether an amended petition is a new cause of action and departure from the original is whether the same evidence will support both petitions, and second, whether the same measure of damages will apply to both. It is hardly conceivable that the title to a tract of land in one section would be exactly the same as the title to a tract of land in another section. Different proof would be required in the separate actions. This is an attempt to tack on to the first suit an entirely new suit. There is not one part of the land described in the original petition covered by the description in the amended petition Ross v. Cleveland Co., 162 Mo. 317; Prehm v. Porter, 165 Mo. 115; Barnham v. Tillery, 85 Mo. App. 453; Scovill v. Glasner, 79 Mo. 449; Bernard v. Mott, 89 Mo. App. 403.

*Swain & Sizemore, Shuck & Cunningham,* and *L. O. Neider* for respondent.

There are two tests by which to determine whether a second petition is an amendment or a substitution of a new cause of action. This is whether the same evidence will support both petitions, and, second, whether the same measure of damages will apply to both. Liese v. Meyer, 143 Mo. 547; Santer v. Leveridge, 103 Mo. 621; Scoville v. Glassner, 79 Mo. 449. While it is true that the lands sued for in the original petition was land in section 15 and the amendment shows it to be in section 22, yet it is the very same land claimed by the plaintiff and held by the defendant. The same testimony required to prove the facts under the original petition, would be required to prove the facts stated in the amended petition.

LAMM, J.—Ejectment in the Shannon Circuit Court. Defendants (claiming a departure) challenge an amended petition by motion to strike out. Unsuccessful, they refuse to appear further, stand on their motion, suffer judgment, duly except and appeal. The departure is said to arise in an amendment changing the *description* of the land. Monthly rents and profits, damages, date of ouster and parties, are the same in both petitions. The change in description appears in the following excerpts, one from the first and the other from the last petition:

*Original Petition.*

"Beginning at the southeast corner of section 15 in township 27, range 6 west, running thence north four rods; thence west eighty rods; thence south four rods;

*Amended Petition.*

"Beginning at the northeast corner of section twenty-two, in township twenty-seven north, range six west, running thence south one hundred feet; thence west eighty

thence east to the place of beginning, containing two acres, more or less; the same being a part of the southeast quarter of the southeast quarter of section 15, in township 27 north, range 6 west."

rods; thence north ninety-two feet; thence east eighty rods to the place of beginning, containing three acres more or less; the same being a part of the northeast quarter of section twenty-two, in township twenty-seven north, range six west."

Comparison shows that the township and range are the same, and, since section twenty-two always lies adjoining and south of section fifteen in the same township and range, it follows that the northeast corner of twenty-two coincides with the southeast corner of fifteen; therefore, though the verbiage differs, the point of beginning in each description is the same. It will be observed, further, that the east and west distances, eighty rods, are the same; hence, since the beginning point is the same, the north line of the second description in point of fact coincides with the south line of the first description. Moreover, it is apparent that the description in the amended petition is of land lying immediately south of that described in the first, the amendment covering a trifle more land.

An additional abstract of the record proper furnished by respondent shows that at appellants' instance and request, after issue joined on the first petition (and before the filing of the amended petition), the court ordered a survey of the tract in dispute and to that end continued the cause. As a sensible convenience in determining disputed land titles, such request and order are within a statutory power (R. S. 1909, Sec. 11299; *Ibid.,* Sec. 11305); and, as the court ordered the survey to be made by the county surveyor,

presumably the order was made under section 11299. Out of excess of abundant caution the order was directed to a board of three, to-wit, the surveyors of Dent, Oregon and Shannon counties. This excess of caution did not vitiate the order; for the maxim is: Abundant caution injures no man. Two of them (the surveyors of Oregon and Shannon) served; and the record shows they made return to the order, filing a plat of their survey, which plat is submitted to us. This plat shows that the trouble in description had its root in where the true line of division between said sections fifteen and twenty-two actually lay and was marked on the earth's surface. It seems that by a former survey that line was located so far south of where the county surveyors, acting under the order of the court, located it that a description of the disputed tract at the time the suit was brought put it on the south side of the southeast quarter of the southeast quarter of section fifteen, as the original petition did; whereas the survey ordered by the court shoved the division line between those two sections to the north several rods. The record also shows that after the survey and plat thereof were filed, plaintiff filed her amended petition and thereby accepted the last survey and described the land in dispute accordingly. It is allowable to say that presumably plaintiff relied on the old survey in drawing her original petition and on the new in drawing her amended petition. The judgment shows that plaintiff's title was by limitation; and, while the area of the second description a little exceeds the area of the first, there is nothing to show that the actual land on the earth's surface, actually in defendants' possession and actually claimed by plaintiff, was any other or separate tract than that intended to be sued for in both descriptions. In other words, the actual land, the real thing, the subject-matter of the suit (apart from the mere arbitrary and conventional description of it) was the same under each petition.

So, the ouster complained of was the same, and for aught appearing here the muniments of title would be the same. Certainly the parol evidence of title by limitation would naturally be the same under both petitions.

Under such circumstances we are of opinion the motion to strike out was well ruled.

This, because:

(a) At common law the power of amendment (subject to limits not pertinent here) was considered an essential incident of the exercise of all judicial power. [1 Ency. of Pl. and Pr., p. 508.] Therefore, even at common law, amendments were peculiarly within the sound (that is, judicial) discretion of the court. [Chouteau v. Hewitt, 10 Mo. l. c. 134.] Speaking generally, "at common law the amendment of pleadings was regarded as a matter so exclusively addressed to the discretion of the trial court that its allowance or refusal could not be reviewed upon error." [1 Ency. of Pl. and Pr., p. 524.]

Broadly, the statute on amendments, applicable here, is in aid and declarative of the common law. [*Vide,* Chouteau case, supra.] Accordingly it has always been construed most liberally to further its benign purpose. Amendments are favored by courts. [House v. Duncan, 50 Mo. 453.] They avoid delay in joining issue on the true merits of a cause and tend to bring litigated controversies to an end. Under the statute on amendments, the trial court's discretion is not immune from review on appeal, but it will not be interfered with unless palpably abused by grafting a separate and independent suit on the stem of the original proceeding. [Joyce v. Growney, 154 Mo. l. c. 263.] Speaking to the right to amend, this court through BLISS, J. (Allen v. Ranson, 44 Mo. l. c. 267), said: "This is necessarily so much a matter of discretion in the court trying the case, that we must pre-

sume that discretion was soundly exercised unless the contrary is shown by a full exhibit.''

That statute reads (Sec. 1848, R. S. 1909): ''The court may, at any time before final judgment, in furtherance of justice, and on such terms as may be proper, amend any record, pleading, process, entry, return or other proceedings, by adding or striking out the name of any party, or by correcting a mistake in the name of a party, or a mistake in any other respect, or by inserting other allegations material to the case, or when the amendment does not change substantially the claim or defense, by conforming the pleading or proceeding to the facts proved.''

Attending to that statute, not only do the cases cited show it, but our reports abound in nearly every volume with cases showing a most liberal trend in reviewing the discretion of trial courts in the matter of allowing amendments before judgment in furtherance of justice on such terms as the circumstances of each case bespeak. The case at bar must be ruled in the light of that statute, and of the foregoing decisions, and not otherwise.

(b) Coming closer to the point, the single question involved on this appeal, to-wit, the power of the trial court in the exercise of a judicial discretion to permit the amendment of a land description in an ejectment suit and kindred cases, is far from new to appellate courts.

Such amendments, on substantially equivalent statutes, have been allowed in other jurisdictions. For example: In Gilman v. Cate, 56 N. H. 160, an action of trespass *qu. cl. fr.*, such amendment, correcting a misdescription of the *locus in quo,* was allowed.

Heilbron v. Heinlen, 72 Cal. 376, was ejectment. In that case the complaint originally described the land as in range twenty. Presently plaintiffs were permitted to amend by striking out twenty and inserting ''nineteen,'' and it was held well enough as against

Wright v. Groom.

the contention that the amendment substituted a new and different cause of action.

Cooper v. Granberry, 33 Miss. 117, was ejectment. In describing the land in controversy the complaint put it in the "northwest" quarter of a given section when in truth and fact it was in the *northeast* quarter. An amendment was permitted correcting this mistake. Error being assigned on that ruling, the court on appeal observed: "The object of the suit was to recover a particular tract of land, and it would have been simply useless litigation, after the error was confessed, if the amendment had not been permitted. The object of the amendment was to bring before the court the true subject of litigation, and not to go through the forms of a trial in regard to a subject, about which there was no controversy between the parties."

Leeds v. Lockwood, 84 Pa. St. 70, was ejectment. There a misdescription of the land was amended by filing a new description and it was held that, saving to defendants the right of a defense, if any, on the ground of limitations, they had no right to object to the amendment merely because of the substitution of a new tract of land. In this connection we refer to a case (Bricken v. Cross, 163 Mo. 449) where, under the particular facts disclosed by the record, the Statute of Limitation was allowed as a defense in ejectment where a new tract of land was introduced by amendment. But that point is not involved here and we need not review the learning on it. Whether the Statute of Limitation would or would not be eked out and tolled (Walker v. Railroad, 193 Mo. 1. c. 474, *et seq.*) in case of an amendment correcting a mere clerical error in a land description or a mere palpable mistake therein is not here for decision at this time.

And in cases involving titles in this jurisdiction the same liberal doctrine in interpreting our own statute on amendments obtains, thus:

Sage v. Tucker, 51 Mo. App. 336, was an action for penal damages for tearing down the fences and gates on the land of Mrs. Sage. Commenced in a justice court, it was sent to the circuit court on defendant's affidavit putting title in issue. In the circuit court an amendment was permitted giving a different description of the *locus in quo*. The assignment of error in that behalf was overruled on the authority of Callaghan v. M'Mahan, 33 Mo. 111.

Callaghan v. M'Mahan, supra, was a suit in two counts, one in equity for land under a resulting trust, the other a claim for money had and received and not expended in the entry of the land. After the evidence was in plaintiff was permitted to amend by describing a different tract of land and thereby correcting a misdescription in the petition. Referring to the statute quoted, supra, in disallowing the assignment of error, this court observed: "This section is broad enough to embrace the amendment made. It was a mere misdescription of the land which seems not to have been noticed by either of the parties upon the trial, and the object of the amendment was to make the petition conform to the facts proved. It does not appear that the defendant was taken by surprise, or in anywise prejudiced."

The M'Mahan case was followed in the late case of Blanchard v. Dorman, 236 Mo. l. c. 443. That was a partition suit begun in the circuit court of Henry and transferred to the circuit court of Cass. In the latter such steps were taken as amounted to an amendment in the description of the land. It was held that if the court had not permitted the amendment it would have been error. In deciding the point it was aptly pointed out by BROWN, C., that: "One of the most common grounds for amendment to a pleading is to correct a mistake in the description of the subject-matter of the litigation, and such mistakes occur nowhere

more frequently than in the technical description of lands.''

Timber & Iron Co. v. Cooperage Co., 112 Mo. 383, was a suit for damages for a wrongful entry and cutting timber and staves, etc., on plaintiff's land in Tennessee, and converting same to defendant's use. The original complaint described the land specifically as ''north'' of Turkey creek, etc. Depositions were on file showing the land was *south* of Turkey creek. Plaintiff offering to amend, was refused permission and that ruling we held error.

Doubtless other cases in point could be found if there was any call to take time for a more extended research. The above must suffice. We have examined the cases cited by appellants and there is nothing in them, when carefully analyzed and discriminatingly applied, militating against the exercise of a wise discretion in correcting land descriptions in pleadings on such statutory terms imposed as may be just.

The facts of the instant case, heretofore set forth, are more persuasive in favor of the exercise of a wise discretion in allowing an amendment below, than in many of the cases referred to; for here the trial court, in informing himself on the right to amend and leading up to the exercise of a discretion, could take judicial notice of the entries in the same case. By that token he knew he had ordered a survey at the instance of defendants, knew it had been made and that the dispute was over a boundary line, that plaintiff claimed by limitation and that the offered amendment related to the identical land embraced in the old petition, but which by a new survey had now a new description. It would have been gross error to have refused the right to amend, under the facts before him.

There are provisions of our statutes providing for continuances and for other terms, in the form of costs, in cases of amendment, but here defendants, asking no terms, stood stoutly and unwisely on their

motion, raising a mere improvident and barren point. They put all their eggs in that one basket. The basket fell. Their eggs broke and rightly so; for there is no showing made disclosing an abuse of discretion *nisi* in allowing the amendment.

Fortunately for defendants, if they actually have title and the right to possession, it may be the courts are still open to them in another action in ejectment, if, after suffering ouster in this suit they wish to put the issue to the touch, but that question is beside this case and may not be passed on now.

The judgment is affirmed. All concur.